IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| OSCAR EDGARDO-GUILLEN, | § | |
| Movant, | § | |
| | § | |
| v. | § | A-14-CA-698-LY |
| | § | (A-10-CR-320(4)-LY) |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are: Oscar Edgardo-Guillen's ("Edgardo-Guillen") Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Dkt. No. 443); Edgardo-Guillen's Memorandum in Support of the Motion (Dkt. No. 444); the Government's Response to the Motion (Dkt. No. 446); and Edgardo-Guillen's Reply to the Government's Response (Dkt. No. 448). The undersigned Magistrate Judge submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. GENERAL BACKGROUND**

On May 18, 2010, Edgardo-Guillen, along with thirteen other defendants, was charged in a one-count indictment with conspiring to possess with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 846. Dkt. No. 14.  The government filed a superseding indictment on June 15, 2010, adding an additional

defendant, but otherwise not amending the charge against Edgardo-Guillen.  On October 6, 2010, Edgardo-Guillen entered into a plea agreement with the government, and on October 13, 2010, he pled guilty to a one-count information charging him with conspiracy to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846.  Dkt. No. 146.  On February 22, 2011, the Court sentenced Edgardo-Guillen to a 188-month term of imprisonment, followed by a four-year term of supervised release, and ordered that Edgardo-Guillen pay a $100 mandatory assessment.  Dkt. No. 309.

Edgardo-Guillen filed a notice of appeal on March 11, 2011, but the notice was untimely. Dkt. No. 337.  Accordingly, on April 28, 2012, the Fifth Circuit remanded the case for a determination of whether the late filing of the notice of appeal was the result of excusable neglect or good cause.  Dkt. No. 342.  The district judge then directed Edgardo-Guillen to file an advisory stating any cause or excusable neglect for the late filing of the notice of appeal.  When nothing was filed in response, the Court entered an order finding that there was no evidence of good cause or excusable neglect to explain the late filing of the notice.  Dkt. No. 346.  Based on this finding, on August 8, 2011, the Fifth Circuit dismissed the appeal for lack of jurisdiction.  Dkt. No. 359.

On August 2, 2012, Edgardo-Guillen filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  Dkt. No. 396.  The motion raised five issues.  In its response the government conceded that one of those issues—that his counsel had been ineffective in failing to file a timely notice of appeal or an advisory explaining the lateness—had merit, and requested that the Court dismiss the motion, reinstate the judgment, and thereby allow Edgardo-Guillen to file a direct appeal of the original conviction.  Dkt. No. 405 at 16.  The undersigned recommended this course of action in a Report and Recommendation dated April 8, 2013, which the district judge adopted on

May 13, 2013, at which time he dismissed the § 2255 motion without prejudice, and reinstated the original judgment. Dkt. Nos. 418; 423. On May 21, 2013, Edgardo-Guillen filed a Notice of Appeal, Dkt. No. 427, and the Court appointed him a new attorney for the appeal, Dkt. Nos. 429; 430. On May 29, 2014, the Fifth Circuit addressed the merits of Edgardo-Guillen's direct appeal and affirmed the judgment, finding that Edgardo-Guillen had waived his right to appeal in his plea agreement. Dkt. No. 436.

Thus, on July 30, 2014, Edgardo-Guillen filed the instant motion under 28 U.S.C. § 2255 challenging his conviction on the basis of ineffective assistance of counsel. Dkt. No. 438.

## II. STANDARD OF REVIEW

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United*

*States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996). Finally, a defendant may waive his statutory right to file a § 2255 motion, if the waiver is knowing and voluntary. *Untied States v. McKinney*, 406 F.3d 744, 746 (2005).

### III. DISCUSSION

Edgardo-Guillen argues that he was denied the effective assistance of counsel because his attorney, Bradley Urrutia ("Urrutia"): (1) failed to fully investigate his case and provide effective assistance of counsel at every critical stage of the proceedings; (2) directed him to unknowingly, unintelligently, and involuntarily sign a plea agreement that was not translated; (3) failed to explain his sentence exposure to him; and (4) failed to present the option of an "open" plea to him—an option which he alleges was far superior to signing a plea agreement that contained appeal waivers and the need to provide substantial assistance to law enforcement.

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors."

*Crane*, 178 F.3d at 312. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312-313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)). This same two-part standard applies to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhard*, 474 U.S. 52, 57 (1985). Therefore, the movant has the burden of proof and of persuasion to establish that a reasonable probability exists that but for his counsel's ineffectiveness, he "would not have pleaded guilty and would have insisted on going to trial." *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987) (quoting *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987)).

A.  **Failure to Investigate and Provide Effective Assistance**

Edgardo-Guillen alleges that his appointed counsel failed to fully investigate his case and allowed erroneous information to stand before the court. Specifically, Edgardo-Guillen states his name is "Jose Francisco Castellon," that he did not reside at the address listed in the presentence report, and that he did not own any of the personal property he forfeited in his plea agreement. Dkt. No. 449 at 11. He argues that Urrutia could have avoided these errors, which he believes resulted in sentence enhancements, by filing pre-trial motions under FED. R. CRIM. P. 12 and 16.

Edgardo-Guillen first claims that Urrutia allowed an incorrect name to stand before the court. He contends that he told Urrutia his name was Jose Francisco Castellon. Interestingly, when the undersigned asked Edgardo-Guillen to state his full name at the start of his guilty plea, he answered that his full name was "Oscar Edgardo-Guillen"—not Jose Francisco Castellon, and he did so immediately after he was placed under oath. Dkt. No. 446-1 at 2. Moreover, the information he pled

guilty to lists several aliases, including "Jose Francisco Castellon," "Oscar Edgardo-Guillen," "Cabo" and "Jose Francisco Castillo." Dkt. No. 147. As such, this claim is without merit, as Edgardo-Guillen's name, regardless of what it truly is, *was* before the court.

Edgardo-Guillen also contends that a full investigation was not done because Urrutia did not object to an address in the presentence report which purported to be Edgardgo-Guillen's residence.[1] Edgardo-Guillen alleges that this purported error led to ammunition seized at that address being erroneously considered to enhance his sentence. This claim also has no merit. During sentencing, Urrutia objected to Edgardo-Guillen's association with this address, thereby raising with the Court the very issue Edgardo-Guillen claims Urrutia failed to investigate. Dkt. No. 446-2 at 5. The court overruled this objection. *Id.* at 15. The fact that Urrutia did not prevail on this argument does not mean his performance was deficient, as "the Sixth Amendment does not require that counsel do what is impossible." *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998) (quoting *Chronic v. United States*, 466 U.S. 648 (1984)).

Edgardo-Guillen next argues that his sentence was enhanced based upon personal items, specifically firearms, found at different addresses and they were not his property. Since these items were not found at his residence, Edgardo-Guillen contends that proof of ownership was required to factor them into his sentencing enhancement. Proof revealing he was not the true owner, Edgardo-Guillen believes, could have been found by Urrutia with adequate discovery under Rule 16. First, Edgardo-Guillen's sentence was not enhanced based upon a finding that *he* possessed firearms, but rather because "[d]ue to his close relationship with Pedro Fuentez, it should have been reasonably

---

[1] According to the presentence report, Edgardo-Guillen resided at 8303 Bluff Springs, Austin, Texas. Dkt. No. 449 at 11.

foreseeable to [him] that firearms would have been used during the conspiracy." Dkt. No. 449 at ¶ 67. Mr. Urrutia in fact contested this issue at the sentencing hearing. Dkt. No. 446-2 at 6-8; 12-13. Once again, Judge Yeakel overruled these objections, and emphasized that the presence of *ammunition* at Edgardo-Guillen's residence was by itself sufficient to result in a sentence enhancement. *Id.* Once more, Edgardgo-Guillen has failed to show how further investigation would have led the court to a different determination.

Lastly, Edgardo-Guillen believes a full investigation would have included pre-trial motions, and specifically contends that Urrutia should have filed a motion under Rule 16 in order to engage in full discovery. Such discovery, Edgardo-Guillen alleges, would have uncovered the errors discussed above, and Urrutia could have then objected with a Rule 12 motion. As noted *supra*, the issues he believes would have been illuminated through this discovery have no merit. Edgardo-Guillen does not present any facts that would allow the undersigned to conclude that a Rule 12 objection would have caused his case to turn out differently than it did. To satisfy the *Strickland* test, Edgardo-Guillen must demonstrate that Urrutia's failure to file pre-trial motions prejudiced his defense. Edgardo-Guillen has failed to establish this.

**B.    Unknowing, Unintelligent, and Involuntary Plea**

Next, Edgardo-Guillen alleges his guilty plea was made unknowingly, unintelligently, and involuntarily, because the plea agreement was not translated for him. This claim has no merit, as "a defendant ordinarily will not be heard to refute [his] testimony given at a plea hearing while under oath." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1987). At the October 13, 2010 plea colloquy, the undersigned specifically asked Edgardo-Guillen about this issue:

> THE COURT:        Mr. Edgardo, you heard [the prosecutor] summarize the terms of this agreement. Now, the full text of your plea agreement is set out in writing. It was signed by you and Mr. Urrutia on October the 5th. Before you signed this, did you have it translated and read to you?
>
> THE DEFENDANT:  Yeah.
>
> THE COURT:        And do you understand your plea agreement?
>
> THE DEFENDANT:  Yes.

Dkt. No. 446-1 at 9. Edgardo-Guillen also answered affirmatively that he was pleading guilty freely and voluntarily, that he was doing so because he was guilty and for no other reason, and that no one had threatened, coerced or induced him to plead guilty. *Id.* at 17-18. Edgardo-Guillen's sworn statements at rearraignment "constitute a formidable barrier in any subsequent collateral proceedings." *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000). Edgardo-Guillen has failed to surmount this formidable barrier.

**C.  Sentence Exposure**

Edgardo-Guillen also claims that Urrutia failed to explain his sentence exposure to him. Once again, Edgardo-Guillen's answers at the plea hearing belie this claim. First, the undersigned specifically informed Edgardo-Guillen of the sentencing range for the charge he pled guilty to. Dkt. No. 449-1 at 11 (informing him of range of 5-40 years of imprisonment). After doing so, the Court also explained in detail the sentencing guidelines and the Sentencing Reform Act, and how the sentence in his case would be determined. After doing so, the undersigned asked Edgardo-Guillen if he "had an opportunity to speak to Mr. Urrutia about the sentencing law, and how all of that might affect your sentence?" *Id.* at 12. Edgardo-Guillen responded, "yes" and further stated that he had no questions for the Court about sentencing. *Id.* at 12-13. Moreover, Paragraph 4 of Edgardo-

Guillen's plea agreement, which Edgardo-Guillen and Urrutia signed on October 5, 2010, specifically states that Edgardo-Guillen's range of punishment was at least five years and not more than forty years of imprisonment. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Edgardo-Guillen offers no facts to overcome his testimony at the plea hearing.

**D.     "Open" Plea Option**

Finally, Edgardo-Guillen contends that he was denied effective assistance of counsel because Urrutia failed to present an "open" plea to him, which he argues would have been far superior to signing a plea agreement. By "open" plea, Edgardo-Guillen apparently is referring to a plea to the indictment with no plea agreement (and therefore no waiver of his right to an appeal). However, Edgardo-Guillen has failed to establish that he was willing to plead guilty to the charge in the indictment, as opposed to the one count of the superseding information that was filed as part of his plea agreement. The indictment charged him with conspiring to possess with intent to distribute 5 kilograms or more of cocaine, whereas the superseding information charged him with conspiring to possess with intent to distribute *500 grams* of cocaine. *See* Dkt. Nos. 73, 147. The lesser charge of the information meant that his sentencing exposure went from 10 years to life to 5-40 years. Because there is no evidence that Edgardo-Guillen would have been willing to plead guilty to the charges in the indictment with no plea agreement, he cannot establish any prejudice on this point, even assuming Urrutia failed to discuss the issue with him.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Movant Edgardo-Guillen's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 be **DENIED**.

## V. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S.Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

## VI. CERTIFICATE OF APPEAL

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States

District Courts, effective as amended to February 1, 2010, the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a certificate of appealability shall not be issued.

SIGNED this 2nd day of June, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE